[Cite as *BMI Fed. Credit Union v. Charlton*, 2017-Ohio-8744.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BMI Federal Credit Union, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-390 |
| v. | : | (C.P.C. No. 14CV-10601) |
| Maurice L. Charlton, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellee, | : | |
| and | : | |
| Evans Automotive Repair, Inc., | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 30, 2017

**On brief:** *Weltman, Weinberg & Reis Co., L.P.A., Amy C. Holbrook*, and *Daniel A. Friedlander* for appellee, BMI Federal Credit Union. **Argued:** *Allen J. Reis.*

**On brief:** *Chieffo Law Office* and *Dominic J. Chieffo* for Appellant. **Argued:** *Dominic J. Chieffo.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Evans Automotive Repair, Inc. ("Evans"), appeals a judgment of the Franklin County Court of Common Pleas entered on April 21, 2016, which granted summary judgment to BMI Federal Credit Union ("BMI") and denied to Evans a cross motion for summary judgment. Because we agree that the Ohio Revised Code provides that a lien properly recorded on an automobile title has priority over subsequent mechanics or artisan liens applied to the vehicle for non-payment of repair charges, we affirm.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} This case commenced October 13, 2014 when BMI filed a complaint and a motion for an order of possession against Maurice L. Charlton, Jr. and Evans. Charlton was the titled owner of a 2004 Chrysler Pacifica and he was in default on the note for the purchase of the vehicle. Evans is a repair facility at which the Pacifica was abandoned by Charlton and which claimed an interest in the vehicle for unpaid repair and storage bills. (Oct. 13, 2014 Compl.; Title, Ex. B, Compl.; Oct. 13, 2014 Mot. for Possession.) On November 3, 2014, a representative of Evans responded pro se and requested a hearing. (Nov. 3, 2014 Req. for Hearing.) On November 11, 2014, Evans responded further, this time through counsel, with a memorandum arguing against the motion for possession. (Nov. 11, 2014 Memo. Contra Mot. for Possession.) Evans argued its lien on the Pacifica had priority over BMI's purchase lien noted on the automobile's title. *Id.* at 1.

{¶ 3} On November 12, the parties (except Charlton, who has never appeared in this case) argued the matter before a magistrate. (Nov. 12, 2014 Hearing Tr., filed June 17, 2016.) At the hearing, the parties stipulated to a number of factual matters which the magistrate accurately set forth in his written decision as follows:

> 1. Defendant Maurice Charlton, Jr. is currently the titled owner of a 2004 Chrysler Pacifica, Serial number 2C8GF68464R597947.
>
> 2. Defendant Maurice Charlton, Jr. executed a Loan Agreement And Consumer Credit Disclosure Statement with [BMI] on December 21, 2012, which is attached to the Complaint and Affidavit in Support of the Motion for an Order of Possession as Exhibit A and which was used to buy the motor vehicle. Pursuant to the Agreement, Defendant Maurice Charlton, Jr. gave [BMI] the remedy of the right of possession with regard to its security interest in the motor vehicle;
>
> 3. [BMI] has a valid lien and security interest in the vehicle as set forth in the affidavit filed by [BMI];
>
> 4. A replacement Certificate of Title with a lien notation indicating a lien in favor of [BMI] as of January 25, 2013, perfecting [BMI]'s security interest, was issued on September 18, 2014, and a true and accurate copy is attached to the Complaint and the affidavit in support of the Motion for an Order of Possession as Exhibit B;

5. Defendant Maurice Charlton, Jr. defaulted on his Agreement with [BMI];

6. Defendant Evans Automotive Repair, Inc. is in possession of the vehicle and has been in possession of the vehicle since January of 2014;

7. Defendant Evans Automotive Repair, Inc. did all of the things that it says it did on the invoice admitted at the hearing as Exhibit 1 with regard to the motor vehicle in question. Specifically, Defendant Evans Automotive Repair, Inc. checked out the engine of the car, charged it's [sic] battery, noted that it needed a valve job and has stored the vehicle from February 16, 2014 until November 3, 2014 at a cost of $2610.00;

8. Under Ohio law, there is the ability to create an artisan's lien such as the one Defendant Evans Automotive Repair, Inc. is claiming in this case.

(Nov. 13, 2014 Mag. Decision at 2-3.) As a factual matter, the magistrate concluded that BMI perfected its security interest in the vehicle on January 25, 2013, a year before Evans' work on the automobile. *Id.* at 3-4; *see also* Ex. B, Compl. ("REPLACEMENT" title issued on September 18, 2014, but noting a lien date of January 25, 2013).

{¶ 4} The magistrate then reasoned as follows:

9. With regard to the issue of priority of [BMI]'s perfected security lien and/or interest versus Defendant Evan's possessory and/or artisan's lien, Ohio courts have held that "[w]hen a creditor acquires a lien over property before a secured party perfects its security interest, the lien creditor will have superior rights to the property" under R.C. 1309.317(A)(2). *Leesburg Fed. Sav. Bank v. McMurray*, 12th Dist. CA2012-02-002, 2012-Ohio-5435, ¶9. "However, when a secured party acquires an interest in a motor vehicle before a lien creditor and follows the requirements of R.C. 4505.13(B), the secured party will have superior rights to the vehicle under R.C. 4505.13(B)." *Id. See also Commonwealth v. Berry*, 2 Ohio St.2d 169 (1965). Consequently, as the Court noted in *Leesburg Fed.*, under Ohio law, the determination of the priority of the liens will depend upon who obtained and/or acquired a lien or a perfected security lien first. *Id.* at ¶9 ("if this court finds that Parrish obtained an artisan's lien over the vehicle before Leesburg's security interest, Parrish's interest will be superior to Leesburg's. Conversely, Leesburg's interest will prevail if Parrish is found not to have acquired an artisan's lien at all or if Parrish acquired its lien after Leesburg's security interest.").

> 10. The Magistrate finds, based upon the evidence and the stipulated facts in this case, that [BMI] is a secured party that acquired an interest in Defendant Maurice Charlton, Jr.'s car as of January of 2013, and [BMI] followed and complied with the requirements of R.C. 4505.13(B). The Magistrate finds, based upon the evidence and the stipulated facts in the case, that Defendant Evans Automotive Repair, Inc. became a possessory and/or artisan's lien creditor of Defendant Maurice Charlton, Jr. in February of 2014, a year after [BMI] followed and complied with the requirements of R.C. 4505.13(B) and, thus, perfected its security interest in the car. As a result, the Magistrate finds that [BMI]'s security interest in Defendant Charlton's motor vehicle is superior to the artisan's and/or possessory lien that Defendant Evans Automotive Repair, Inc. obtained over the vehicle.

(Mag. Decision at 7-8.)

{¶ 5} Evans timely objected to the magistrate's decision before the trial court, and BMI filed the requisite bond in anticipation of collecting the automobile. (Nov. 21, 2014 Bond; Nov. 26, 2014 Objs. to Mag. Decision; Dec. 8, 2014 Memo. Contra Objs.) Then, on December 11, 2014, Evans filed an answer to the original complaint and included a counterclaim against BMI alleging that Evans' lien on the vehicle had priority over BMI's and seeking to hold the vehicle until BMI paid all storage and repair bills for the automobile. (Dec. 11, 2014 Answer and Counterclaim at ¶ 17-26.) On July 6, 2015, the trial court overruled Evans' objections to the magistrate's decision and adopted it as its own. (July 6, 2015 Decision.) Based on that decision and a default judgment previously granted against Charlton for failure to defend, on July 13, 2015 the trial court entered judgment against Charlton and for BMI for $7,304.12 plus interest, permitting BMI the rights to attach and to take permanent possession of the vehicle from Evans. (July 13, 2015 Entry at 1-2.)

{¶ 6} Evans appealed but the appeal was dismissed on September 8, 2015, by agreement of the parties that the trial court's July 13, 2015 entry was not a final appealable order. (Sept. 8, 2015 Entry of Dismissal (filed with the trial court the next day, September 9, 2015).)

{¶ 7} On November 30, 2015, Evans moved for summary judgment on its counterclaim against BMI for its expenses regarding the Chrysler Pacifica and forfeiture of the bond posted in court by BMI. (Nov. 30, 2015 Mot. for Summ. Jgmt.) Approximately two months later, on February 5, 2016, BMI moved for summary judgment against Evans

combined with a response to Evans' motion for possession. (Feb. 5, 2016 Mot. for Summ. Jgmt.) On February 16, Evans timely responded to BMI's summary judgment motion. (Feb. 16, 2016 Memo. Contra Summ. Jgmt.) The parties agreed that the facts were not in any essential dispute and focused instead on the legal question–whose lien had priority?

{¶ 8} On April 21, 2016, the trial court issued a decision denying Evans' motion for summary judgment and granting BMI's motion for summary judgment finding that BMI's prior lien, recorded on the face of the automobile title, had priority over Evans' later possessory or artisan lien. (Apr. 21, 2016 Decision at 5-6.)

{¶ 9} Evans now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 10} Evans assigns a single error for review:

> THE TRIAL COURT ERRD [sic] IN FINDING THAT A PRIOR PERFECTED SECURITY INTEREST IN A MOTOR VEHICLE TAKES PRIORITY OVER AN ARTISANS [sic] POSSESSORY LIEN OF AN AUTOMOTIVE REPAIR FACILITY.

## III. DISCUSSION

{¶ 11} Our review on summary judgment is de novo. *State Farm Mut. Auto. Ins. Co. v. Advanced Impounding & Recovery Servs.*, 165 Ohio App.3d 718, 2006-Ohio-760, ¶ 8 (10th Dist.) Ohio statutory and common law provide that an artisan who invests his or her work in a chattel may obtain a lien upon the chattel to secure the payment obligation relating to the work. R.C. 1333.41; R.C. 1309.333; *Commonwealth Loan Co. v. Berry*, 2 Ohio St.2d 169 (1965). But the statutory lien available to bailees for hire is, by its own terms, inapplicable to motor vehicles. R.C. 1333.41(E). Thus, only under common law, could an "artisan" (or, to use the modern term, "possessory") lien be found if at all in this case. A discussion of this law follows.

{¶ 12} Generally a "possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise." R.C. 1309.333(B). Since no statute creates the common law possessory lien being asserted in this case (because R.C. 1333.41 is inapplicable to motor vehicles), the general rule that a "possessory lien on goods has priority over a security interest in the goods" would seem to control the outcome of the case. R.C. 1309.333(B). However, specifically with respect to automobiles, another statute provides that "any security agreement covering a security

interest in a motor vehicle, if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title * * *, is valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants." R.C. 4505.13(B). This presents an apparent conflict between R.C. 4505.13(B) and 1309.333(B).

{¶ 13} But the Supreme Court of Ohio has essentially decided this conflict. In 1965, it held that the specific controls over the general statute concerning the predecessor statute of R.C. 1309.333(B), i.e., former R.C. 1309.29:

> Section 1309.29, Revised Code * * * provides:
>
> "When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."
>
> The lien referred to in Section 1309.29, Revised Code, is the artisan's lien. The artisan's lien prior to the enactment of Section 1333.41, Revised Code, was a common-law lien. That section makes the artisan's lien a statutory lien but expressly excludes motor vehicles from its operation. It follows that the artisan's lien to the extent that it affects motor vehicles is still a common-law lien and, hence, does not fall within the exception in Section 1309.29, Revised Code.
>
> The language of Section 4505.13, Revised Code, specifically makes a security agreement conveying a security interest in an automobile, if a notation of such instrument has been made by the Clerk of the Court of Common Pleas on the face of the certificate of title, valid against other lienholders.
>
> There is an apparent conflict as to the priority of the liens under the subject statutes. However, the General Assembly by expressly eliminating motor vehicles from the provisions of Section 1333.41, Revised Code, by expressly excepting motor vehicles from the required filing to protect a security interest in Section 1309.21 (C) 2, Revised Code, and by the amendments of Section 4505.13, Revised Code, the specific statute which deals with motor-vehicle liens and which states that a lien noted upon the certificate shall be valid against other liens, has made it clear that the enactment of the Uniform Commercial

> Code was not intended to alter the well established law of Ohio as to the priority of liens upon motor vehicles.
>
> A special statutory provision which relates to a specific subject matter is controlling over a general statutory provision which might otherwise be applicable. *Andrianos v. Community Traction Co.*, 155 Ohio St. 47.
>
> We conclude, as did the Court of Appeals, that the specific priority provided in Section 4505.13, Revised Code, prevails over the general provision of Section 1309.29, Revised Code.

*Berry* at 169-70.

{¶ 14} With the passage of legislation to repeal R.C. 1309.29 and to enact R.C. 1309.333(B), Evans argues that *Berry* no longer applies. But our comparison of the former with the current statute shows similarity in the salient language between each of them. The former statute read as is quoted by the Supreme Court in *Berry*:

> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, *a lien upon goods in possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.*

(Emphasis added.) *Berry* at 169-70. Current R.C. 1309.333 contains this language:

> (A) As used in this section, "possessory lien" means an interest, other than a security interest or an agricultural lien:
>
> (1) That secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;
>
> (2) That is created by statute or rule of law in favor of the person; and
>
> (3) Whose effectiveness depends on the person's possession of the goods.
>
> (B) *A possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise.*

(Emphasis added.) R.C. 1309.333.

{¶ 15} Despite the slight variations in wording, we interpret that the statutes similarly require that a possessory lien obtained by someone "furnish[ing]" "services or materials" "with respect to goods" in "the ordinary course of * * * business" has "priority over" a "security interest" *unless* the lien is "statutory" (or "created by statute") and the statute "expressly provides otherwise." R.C. 1309.333 and former R.C. 1309.29 (1962). Though this Court has not previously addressed this exact issue, the Twelfth District Court of Appeals has already expressed this analysis:

> In *Berry*, the Supreme Court found that the statute governing a security interest in a motor vehicle, R.C. 4505.13, prevails over the statute governing the priority of artisan's liens, R.C. 1309.29. Since *Berry*, R.C. 1309.29 has been repealed and R.C. 1309.333, which governs the priority of possessory liens, was adopted. Although *Berry* discussed the interaction between R.C. 1309.29 and R.C. 4505.13, we find that *Berry* is still applicable to the case at bar as R.C. 1309.333 is substantially similar to R.C. 1309.29.

*Leesburg Fed. Sav. Bank v. McMurray*, 12th Dist. No. CA2012-02-002, 2012-Ohio-5435, ¶ 9, fn. 3. Additionally, *Berry* has been cited after R.C. 1309.29 was repealed and R.C. 1309.333 was enacted, without any suggestion that it was superseded by the change in statute. *See Alb United States Auto, Inc. v. Modic*, 8th Dist. No. 98914, 2013-Ohio-1561, ¶ 23 (E. Gallagher, J. dissenting); *Leesburg* at ¶ 9-14; *State v. Ames*, 182 Ohio App.3d 736, 2009-Ohio-3509, ¶ 14; *Mannix v. DCB Serv.*, 2d Dist. No. 19910, 2004-Ohio-6672, ¶ 28.

{¶ 16} Evans further argues that it is "common sense" that an artisan or possessory lien should have priority over a purchase lien noted on a vehicle's certificate of title. (Evans Brief at 10.) Evans argues no shop would work on an automobile if the shop would not be the first secured creditor and could be preempted by the lienholder who lent the money to purchase the car. *Id.* A secured loan for a motor vehicle for which there is a publicly ascertainable record does not lose priority to a later security interest taken by a repair shop that could have learned whether there existed a prior lien before performing the repair and storing the vehicle. *Berry* was decided in 1965, and somehow, shop owners apparently have been finding "common sense" ways to deal with the law since then. Moreover, the Ohio Revised Code specifies how a vehicle repair shop may take title to an unclaimed vehicle after "caus[ing] a search to be made of the records of the bureau of motor vehicles" to "identify any owner or lienholder" and give notice to the lienholder. R.C. 4505.101(A)(1).

{¶ 17} BMI's lien was noted on the face of the certificate of title. (Ex. B, Compl.) The notation indicated the lien was as of January 25, 2013. (Mag. Decision at 3 (stipulation of the parties); *see also* Ex. B, Compl. ("REPLACEMENT" title issued on September 18, 2014 but noting a lien date of January 25, 2013).) Evans' possession of the automobile did not begin until approximately one year later in January 2014. (Mag. Decision at 3 (stipulation of the parties).) BMI's lien has priority and BMI was entitled to summary judgment. Accordingly, we overrule Evans' sole assignment of error and affirm the trial court.

## IV. CONCLUSION

{¶ 18} BMI's lien was perfected, noted on the face of the title, and thus, as a matter of statute and case law, took priority over the subsequently acquired common law artisan lien held by Evans. Evans' sole assignment of error is overruled and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

———————————